GISKAN SOLOTAROFF & ANDERSON LLP
90 Broad Street, 2nd Floor
New York, New York 10004
Catherine Anderson
(212) 847-8315
*Attorney for Plaintiff*

UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------------X

SAURABH PASSI,

                        Plaintiff,                                    Case No.

v.

JPMORGAN CHASE, N.A.,                                 **COMPLAINT**

                        Defendant.                               JURY TRIAL DEMANDED
-----------------------------------------------------------------------X

       1.      Plaintiff Saurabh Passi, by and through his undersigned counsel, brings this action for discrimination in employment on the basis of sex, gender and race in violation of Title VII of the Civil Rights Act of 1964 ("Title VII") as amended, 42 U.S.C. §§ 2000e, *et seq*., discrimination in employment on the basis of sex, gender, and familial status in violation of the New York State Human Rights  Law, the New York Executive Law §§ 290 and 296 ("NYSHRL"), and discrimination in employment on the basis of sex, gender, and caregiver/familial status under the New York City Human Rights Law, N.Y. City Adm. Code § 8-101 *et seq*. ("NYCHRL") (hereinafter collectively referred to as the "anti-discrimination laws") against his former employer, Defendant JPMorgan Chase, N.A. ("Defendant" or "Chase").

2.      During his employment with Chase, Plaintiff was denied opportunities and resources provided to his Caucasian co-workers.  This negatively affected Plaintiff's performance and ability to generate income.  When Plaintiff met target performance numbers, he was denied resources awarded to others for meeting similar levels of performance.  Plaintiff, moreover, was unduly signaled out due to his race and/or his sex, gender and parental status and the exercise of his rights under the New York Family Leave Law ("NYFLL") to care for his young, autistic son.  Indeed, Plaintiff received a written warning and was placed on a Performance Improvement Plan ("PIP").  Plaintiff's Caucasian co-workers with similar numbers as Plaintiff were not placed on PIPs.  Moreover, Plaintiff's co-workers, who did not take family leave and/or do not have an ongoing obligation to care for an autistic child, were not placed on PIPs.

3.      In or around July 2021, as a result of the discriminatory and disparate treatment Plaintiff received at Chase, which detrimentally impacted his ability to generate income and advance his career, Plaintiff was forced to leave Chase for other employment.

## THE PARTIES

4.      Saurabh Passi is a 38-year-old man of Indian descent and the father of two children, including a two year old son with autism.  Mr. Passi resides in Staten Island, New York.

5.      Defendant JPMorgan Chase, N.A. ("Chase"), is a national bank with its headquarters located at 270 Park Avenue, New York, New York.

## JURISDICTION AND VENUE

6.      This Court has jurisdiction pursuant to 42 U.S.C. §§ 2000e, *et seq.*, and 28 U.S.C.§ 1331.

7.      This Court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367.

8.      Venue is proper in the Southern District of New York pursuant to 28 U.S.C. § 1391(b) and (c) because the majority of unlawful acts complained of occurred in, and the records relevant to such practices are maintained in, this District where the Defendant resides.

## STATEMENT OF FACTS

9.      In February 2015, Plaintiff commenced work at Chase as a Home Lending Advisor ("HLA").  He and another HLA covered the Chase branch located at 360 East 72nd Street, New York, New York 10021.  Plaintiff reported to Dee Lakhani.

10.     Plaintiff and his manager, Ms. Lakhani, had discussions about transferring Plaintiff to a Chase "mega-branch," such as 277 Park Avenue or the Radio City branch. Working at a mega-branch provides HLAs with more referral opportunities and larger loan sizes, and thus provides greater opportunities for HLAs to meet or exceed their target numbers and for career advancement.  Plaintiff and his manager also discussed hiring an assistant for Plaintiff, which would require Plaintiff to bring in over 10 million in loans in six months, or 20 million in loan funding in one year.  Plaintiff met this goal and brought in over 10 million in loans in six months in 2015 and thus, qualified for an assistant.

11.      Plaintiff's manager, Ms. Lakhani, asked Plaintiff to provide temporary coverage to another Chase branch located at 1025 Madison Avenue, New York, New York 10075.  Plaintiff provided coverage for this branch from the summer 2015 to early 2016.

12.     In January 2016, Plaintiff's manager took medical leave.  On January 13, 2016, Plaintiff's manager texted Plaintiff stating that she would like him to meet with Kerry Dawson, a Senior Lending Manager, to discuss Plaintiff obtaining an assistant and potentially moving to a mega-branch in midtown Manhattan.

13.     Ms. Dawson refused to give Plaintiff an assistant, despite him meeting the requirements for obtaining an assistant, and also refused to move him to a mega-branch in midtown.  Ms. Dawson told Plaintiff that she wanted to see him do 30 to 40 million in loans per year before she would assign him an assistant, despite company policy setting the bench mark for obtaining an assistant at either 20 million in one year or 10 million in six months, which Plaintiff had met.  Ms. Dawson also told Plaintiff that all the "right" people are in the right branches and that there were no openings for him at a mega-branch.

14.     In March 2016, Plaintiff's manager, Ms. Lakhani, returned to work.  She informed Plaintiff that her manager was being difficult regarding assigning Plaintiff an assistant or a transfer to a larger branch and that he would need to increase his volume to 30 or 40 million annually, irrespective of Chase setting lower production volumes, in order for Plaintiff to qualify for an assistant.

15.     In mid-2016, Jerry Lane was moved to another Chase branch, and Plaintiff was solely responsible for covering the Chase branch at 360 East 72nd Street, New York, New York.

16.     On October 3, 2016, Plaintiff's manager complimented his work stating, "Saurabh, nice improvement across the board, csat, pull thru, suspends, now you need more volume!"

17.     In 2016, Plaintiff earned $135,343.00 at Chase.

18.     In or around April 2017, Plaintiff's manager left Chase on medical leave and did not return.  At this time, Kerry Dawson because Plaintiff's interim manager.

19.     In or around June 2017, Ms. Dawson informed Plaintiff that he would be sharing the Chase branch at 360 East 72nd Street with Raymond Bickel, who is a Caucasian male and younger than Plaintiff.   Unlike Plaintiff, Mr. Bickel was also assigned to cover two separate Chase branches at 1324 York Avenue, New York, New York 10021 and 181 East 90th Street, New York, New York 10128.

20.     At or around this time, Plaintiff asked Ms. Dawson whether he also would be receiving additional Chase branches to cover and additional resources.  Ms. Dawson told Plaintiff no.

21.     As a result of sharing his only branch with Mr. Bickel, Plaintiff's income dropped in 2017 to $71,901.00.

22.     In October 2017, Steve Shteyn was hired by Chase as a Lending Manager. Plaintiff now reported to Mr. Shteyn.

23.     In 2018, Plaintiff learned that Mr. Bickel was given two more Chase branches to cover.  At this time, Plaintiff was covering the one branch which he shared with Mr. Bickel. Plaintiff asked his manager, Mr. Shteyn, if he could cover a second branch.  Mr. Shteyn agreed, and Plaintiff was assigned to cover 453 East 86th Street, New York, New York 10028

24.     In October 2018, Plaintiff's son was born.

25.     For 2018, Plaintiff's salary increased to $107, 835.00 because he was assigned to cover two branches.

26.     In January 2019, Plaintiff was working from home to care for his infant son.  At or around this time, his production level dropped.  He was put on a Performance Improvement Plan ("PIP").  However, his manager, Mr. Shteyn, informed Plaintiff in January 2019 that he was taken off the PIP because his rolling three-month average including January 2019 was over the threshold for being placed on a PIP.

27.     In early March 2019, Plaintiff filed to take six weeks paternity leave under the New York State Paid Family Leave Law ("NYFLL"), commencing March 18, 2019.

28.     On March 15, 2019, within days of filing for paternity leave under the NYFLL, Plaintiff received a written warning that required Plaintiff to agree to meet certain production requirements while on paternity leave.  Plaintiff refused to sign the written warning.

29.     In October 2019, Chase downsized management and both Mr. Shteyn and Ms. Dawson were let go.  Michael Poremba became Plaintiff's new manager and Vincent DeCicco became the Senior Lending Manager for all of the Chase branches in Manhattan.

30.     In or around October 2019, Plaintiff spoke with Mr. Poremba about moving to a mega-branch in midtown or downtown, but his request was not honored.  In contrast, Plaintiff's co-worker, Mr. Bickel, was assigned to cover additional branches, including the Grand Central mega-branch.  Plaintiff still was required to share the Chase branch located at 360 East 72nd Street, New York, New York 10021 with Mr. Bickel.

31.     In late 2019, the manager at the Chase branch located at 453 East 86th Street left for maternity leave.  The new branch manager assigned his HLA from a different branch to cover 453 East 86th Street as well.

32.     In 2019, Plaintiff's earnings at Chase dropped to $42,586.00.

33.     In March 2020, with the onset of the Covid-19 Pandemic, Plaintiff and other bankers were required to work from home.  Chase suspended Plaintiff's and other bankers' minimum production levels and guaranteed a commission for the next three months based on November 2019 through January 2020 production levels.

34.     In May 2020, Plaintiff's young son was diagnosed with autism.  In July 2020, Plaintiff informed his manager of his son's diagnoses.

35.     Plaintiff was informed that minimum production levels would go back in effect at Chase in or around August or September 2020.

36.     In or around September 2020, Plaintiff applied for a transfer to another Chase branch.  His request was denied.

37.     In November 2020, Plaintiff informed his manager that he was not getting referrals from his branch at 360 East 72nd Street and requested to be moved to a different branch or be given the opportunity to cover another branch in addition to 360 East 72nd Street.  In response, Plaintiff's manager instructed Plaintiff to start calling 100 people every week and to provide an excel spread sheet.  Plaintiff requested better computer equipment for this project, since the laptop provided by Chase consistently lost connection and had a small screen, which was not conducive to creating excel spread sheets.  Plaintiff's request for better computer equipment was denied.

38.     On or around January 6, 2021, Plaintiff's manager, Mr. Poremba, placed him on a PIP because his numbers were low.

39.     Plaintiff's Caucasian co-workers, with the same title and duties, similarly had low numbers.  However, unlike Plaintiff, his Caucasian co-workers were not placed on a PIP.

Plaintiff's placement on a PIP was disparate treatment based on his race and/or gender, sex and parental status as the father of a young, autistic child for whom Plaintiff exercised his right, and would continue to need to exercise his right, to take leave under the NYFLL to provide care.

40.     In the first week of February 2021, Plaintiff applied for one week of leave under the NYFLL from February 15 through February 19, 2021, and for intermittent leave of two days per week for up to sixteen weeks total annually in order to care for his young son with autism. Plaintiff's request was approved, and he took leave pursuant to the NYFLL the week of February 15, 2021.  Commencing February 22, 2021, Plaintiff took two days per week of leave under the NYFLL to care for his young son.

41.     On February 12, 2021, Plaintiff sent an email to Chase Senior Management, including Jamie Dimon, the Chairman and Chief Executive Officer of Chase, Vincent DeCicco, the Senior Lending Manager for the Chase branches in Manhattan, Peter Jinaette, the Senior Vice President of Mortgage Banking, Patricia Maguire-Feltch, the Senior Vice President of Operations Executive, Mark W. O'Donovan, the Chief Executive Officer of Home Lending, Marianne Lake, the Co-CEO of Consumer & Community Banking, and Gordon Smith, the Co-President and Chief Operating Officer.  In this email to Chase Senior Management, Plaintiff explained the discriminatory treatment he had been subjected to during his employment with Chase.  Plaintiff explained that on January 4, 2021, his manager called Plaintiff to discuss the 2021 goal plans and told Plaintiff that his pipeline looks good.  Nevertheless, Plaintiff's manager decided to place Plaintiff on a PIP.  Plaintiff asked his manager why he was being put on a PIP when he met the company's minimum production levels.  Plaintiff's manager told Plaintiff, in sum and substance, that "[i]t's  not only about minimum production requirements, it's beyond

that."  Plaintiff asked his manager to show Plaintiff this so-called "beyond that" policy in

writing, for which Plaintiff was being placed on a PIP.  Plaintiff's manager's response was, in

sum and substance, "there is no such policy in writing, but I have cleared it with Human

Resources."

      42.    In his February 2021 email to Chase Senior Management, Plaintiff indicated that

the PIP he had been placed on had no final review date and that there were 20 metrics or

performance requirements listed on the PIP for Plaintiff to meet, which the majority of the HLAs

working for Chase do not  meet.  Plaintiff indicated to Chase Senior Management that he was

being set up to fail and being asked to meet performance requirements that other HLAs were not

required to and did not meet.

      43.    Plaintiff further informed Chase Senior Management in the February 2021 email

that he received emails every week from management, and is informed on the weekly manager

call, that Chase is paying $5,000 in referral fees for new HLAs because Chase has a lot of

branches that need coverage.  Plaintiff stated, in sum and substance, "And here I am asking my

current manager Michael Poremba for one and a half year[s], since he became my manager, to

change my branch (72nd and 1st Ave), and for one and a half year[s], I received the response

[from Poremba] 'there isn't any available,' and that he will let me know once something 'opens

up.'  Then, on Jan 12, 2021, he [Mr. Poremba] tells me, 'the reason I haven't changed your

branch is due to your numbers sucks.'"

      44.    In the February 2021 email to Chase Senior Managers, Plaintiff continued, stating

in sum and substance,  "I know Chase is big on analytics, and they can see exactly how many

referrals are made from that branch.  Every year since 2017 branch referral [at the 360 East 72nd

Street branch] has gone down. Also, not to mention that in 2017, management put another HLA in that branch and resources are being shared. That same coworker over the last few years got . . . more branches to cover[], while still sharing my branch resources. A lot of other HLA[s] in my team and Manhattan have gotten better resources over the last few years, but I have been denied the opportunity for over the last 4 years. . . . . We are in 2021, and it still seems like a struggle to get equal opportunity and be treated fairly."

45.     On February 23, 2021, in response to Plaintiff's February 2021 email, Jen Joyce from Chase Human Resources reached out to Plaintiff by telephone.  Ms. Joyce said she was sorry to hear about his situation, that she would commence an investigation, and that she would reach out to Plaintiff every two weeks – which she failed to do.

46.     In February 2021, Mr. Passi filed a timely charge with the Equal Employment Opportunity Commission ("EEOC").

47.     In May 2021, Plaintiff once again requested the opportunity to transfer to a more desirable branch.  His request was denied by Vincent DeCicco, the Senior Lending Manager for the Chase branches in Manhattan

48.     On July 9, 2021, Plaintiff was forced to resign from Chase for other employment due to the discriminatory treatment he had received and had suffered damages as a result, including loss of income and career advancement opportunities that were provided to other HLAs.

49.     On  May 7, 2021, the EEOC issued a Notice of Right to Sue, which he received on May 7, 2021.  A copy is attached hereto as Exhibit A.  This action has been timely commenced within ninety (90) days of the EEOC's issuance of the Notice of Right to Sue.

## FIRST CAUSE OF ACTION
(Gender, Sex and Race Discrimination in Violation of 42 U.S.C. § 2000e)

50.     Plaintiff repeats and realleges each and every allegation contained above as if set forth fully herein.

51.     Defendant discriminated against Plaintiff in the terms and conditions of his employment based on his sex, gender and race in violation of 42 U.S.C. §2000e.

## SECOND CAUSE OF ACTION
(Gender, Sex and Familial Status Discrimination in Violation of NYSHRL)

52.     Plaintiff repeats and realleges each and every allegation contained above as if set forth fully herein.

53.     Defendant discriminated against Plaintiff in the terms and conditions of his employment based on his gender and sex and familial status in violation of NYSHRL, the New York Executive Law §§ 290 and 296.

## THIRD CAUSE OF ACTION
(Gender, Sex, and Caregiver/Familial Status Discrimination in Violation of NYCHRL)

54.     Plaintiff repeats and realleges each and every allegation contained above as if set forth fully herein.

55.      Defendant discriminated and retaliated against Plaintiff in the terms and conditions of his employment based on his gender and sex and caregiver/familial status in violation of NYCHRL.

## JURY DEMAND

Plaintiff demands a trial by jury of all issues as of right by jury.

**WHEREFORE**, Plaintiff demands judgment against Defendant as follows:

11

A.  Awarding Plaintiff lost wages and compensatory damages, including damages for

emotional distress;

B.  Awarding Plaintiff punitive damages in an amount to be determined at trial;

C.  Awarding Plaintiff all costs of this action and reasonable attorney's fees; and

D.  Granting Plaintiff such other relief as the Court deems appropriate and equitable,

including injunctive and declaratory relief as may be required in the interest of justice.

Dated:  August 5, 2021
        New York, New York

                                    **GISKAN SOLOTAROFF**
                                      **& ANDERSON LLP**

                                    */s/ Catherine E. Anderson*
                                    _____

                                    Catherine E. Anderson, Esq.
                                    Email: canderson@gslawny.com
                                    90 Broad Street, 2nd Floor
                                    New York, NY 10004
                                    Tel: (212) 847-8315